UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID JAMES RUPERT,<br><br>Defendant. | CR. 16-50151-JLV<br><br><br>ORDER |

## INTRODUCTION

Defendant David Rupert, appearing *pro se*, filed a motion for compassionate release. (Docket 103). Pursuant to the May 1, 2020, Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. Rupert's motion. (Dockets 104 and 105). For the reasons stated below, defendant's motion is denied.

## STANDING ORDER 20-6

Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of

---

[1] See https://www.sdd.uscourts.gov/socraa ("SO 20-06").

the COVID-19 virus into the federal prison system." (SO 20-06 at p. 1).  Under the order, the FPD is automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act." Id. at ¶ 1.  The initial step for the FPD is to

> communicate a recommendation to inmates interested in compassionate release that they immediately submit requests for compassionate release to the warden of the facility in which they are detained, if they have not done so already.  These communications will include the recommendation that the prisoner describe their proposed release plan.

Id. at ¶ 2.

By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id. at p. 2 ¶ 4.  Those categories are:

a. High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § l.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

b. Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

c. Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

d. Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id. The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office." Id.

## FACTUAL BACKGROUND

On May 21, 2018, David Rupert was sentenced to a term of imprisonment for 240 months and a term of 10 years supervised release for his conviction for conspiracy to distribute a controlled substance. (Docket 88). According to Mr. Rupert's presentence report ("PSR"), "[b]ased upon a total offense level of 34 and a criminal history category of VI, the guideline imprisonment range is 262 months to 327 months." (Docket 85 at ¶ 71).

Mr. Rupert is currently an inmate at the United States Penitentiary in Florence, Colorado ("FCI Florence"). (Docket 140). According to the United States, Mr. Rupert has a scheduled release date of June 6, 2033. (Docket 106 at p. 1). According to the Bureau of Prisons' ("BOP") website, Mr. Rupert's release date is December 25, 2032.[2]

## MR. RUPERT'S CLASSIFICATION

On May 17, 2022, the FPD and the U.S. Attorney filed a notice of categorization of compassionate release motion. (Docket 104). They jointly "agree that this case should be categorized as a Low Priority case." Id.

---

[2]See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and

compelling examples. Id. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served and (4) compelling family circumstances. Id. There was a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D). These categories have not been updated since December 2018 when FSA became law.[3]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district

---

[3]Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

5

courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Mr. Rupert submitted an administrative request to the warden of FCI Florence on April 20, 2022. (Docket 105 at pp. 314-16). The warden denied the request on April 21, 2022. Id. at p. 317. Mr. Rupert exhausted his administrative remedies.

### B. Defendant's Motion for Compassionate Release

"Mr. Rupert's request is solely based upon the premise that if sentenced today, he would not receive the minimum mandatory 'twenty year' term he received." (Docket 109 at p. 2). Instead "he would only receive 180 months and/or 15 years, which serves as a five year reduction of the imposed term of imprisonment." Id. at p. 2.

Rupert understands the First Step Act was not enacted retroactively. (Docket 103 at p. 2). Instead,

> Mr. Rupert is of the contention that several district and circuit courts have adopted the position and legal standard - that a successful showing that a significantly lower sentence would be imposed today after changes in the law, can in fact serve as 'extraordinary' and 'compelling' in accordance with the provisional scope of the First Step Act and the statutory provision on a case-by-case bases, meaning. That although the law enacted and relied upon by the defendant was/is not subject to the spectrum of

6

> retroactive application. It is well within the discretion and authority of this Honorable Court to grant Mr. Rupert relief.

(Docket 103 at p. 3). In support of his argument, Mr. Rupert cites to United States v. Urkevich, 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); (Docket 109 at p. 2). In Urkevich, a Nebraska District Court granted compassionate release where the defendant's offenses would have yielded 480 fewer months of imprisonment under the current sentencing regime. Mr. Rupert requests a 60-month reduction, nearly 13% of that in Urkevich.

The Eighth Circuit clearly spoke: "we conclude that a non-retroactive change in law, whether offered alone or in combination with other factors, cannot contribute to a finding of 'extraordinary and compelling reasons' for a reduction in sentence under § 3582(c)(1)(A)." United States v. Crandall, 25 F. 4th 582, 586 (8th Cir. 2022)). The argument that if Mr. Rupert was sentenced under the First Step Act, he could have been sentenced to the minimum sentence of 15 years imprisonment instead of his 20-year sentence "cannot contribute to a finding of 'extraordinary and compelling reasons.'" Id.

### C. 3553(a) Factors

The 3553(a) sentencing factors further show that compassionate release is not warranted. These factors include:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

2. the need for the sentence imposed—

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

7

  c. to protect the public from further crimes of the defendant; and

  d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

Mr. Rupert's Factual Basis Statement reads:

> In May 2016, David James Rupert, the defendant, was released from custody on a previous offense. That same month he joined a methamphetamine distribution conspiracy. Thereafter, the defendant transported methamphetamine from Idaho to western South Dakota on numerous occasions.[4] Once in South Dakota, the defendant would further distribute the methamphetamine to others for use and distribution. Over the course of the conspiracy, it was foreseeable to the defendant that at least 1.5 kilograms but less than 5 kilograms of methamphetamine would be distributed. As part of his role in the conspiracy, the defendant possessed an Arcus, model 94, 9mm pistol[.]

(Docket 85 at ¶ 5). Additionally, in November 2016, Mr. Rupert was arrested, and a search incident arrest "revealed him to be in possession of approximately 4.96 grams of heroin, 7.03 grams of methamphetamine, and $6,340.00." Id. at ¶ 8. As part of the plea agreement, Mr. Rupert was not held criminally responsible for any drugs other than methamphetamine. Id. at ¶ 10. It is concerning for the court that Mr. Rupert conspired to sell methamphetamine the same month he was released from custody on a pervious offense. Even more concerning is that the previous offense was for trafficking between 28 and

---

[4]On October 9, 2016, Mr. Rupert admitted to traveling from Idaho to Rapid City approximately four to six times since May 2016, and he would bring back approximately one to three pounds of methamphetamine each trip. (Docket 85 ¶ 7).

200 grams of methamphetamine, a nearly identical offense to the crime for which he is serving his sentence today.  Id. at ¶ 33.

Mr. Rupert was sentenced to a term of imprisonment of 240 months which was a downward variance from his guideline range of 262 months to 327 months imprisonment.  (Dockets 85 at ¶ 71 and 88).

Mr. Rupert has an extensive criminal history including two possession of controlled substances convictions, aggravated assault and driving under the influence.  (Dockets 85 at ¶¶ 27-33).  Considering the 3553(a) factors, no basis exists for release.

The court concludes Mr. Rupert's sentence of 240 months is appropriate for the seriousness of the crime he committed.

## ORDER

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 103) is denied.

Dated April 3, 2023.

                BY THE COURT:

                /s/ *Jeffrey L. Viken*
                JEFFREY L. VIKEN
                UNITED STATES DISTRICT JUDGE